**Beck Estate**

*Patrono, Ceisler and Edwards,* for appellant.

*A. Ralph Ellis,* Special Assistant Attorney General, for Commonwealth.

RAHAUSER, J., February 27, 1970.—Erwin Beck died December 3, 1968, domiciled at 22 Hawthorne

Road, Forest Hills, Allegheny County, Pa. He was survived by his wife and two children. Letters testamentary were issued to the surviving spouse, Frances L. Beck, on January 20, 1969.

On July 15, 1969, the executrix filed an appeal from appraisement of the Inheritance Tax Department of Allegheny County, alleging that the deductions claimed by the executrix were erroneously disallowed.

Petitioner complained that the executrix' fee was reduced from $7,800 to $2,000; that the family allowance was reduced from $1,000 to $752.94 and that the $55,000 received from the sale of the doctor's office and business was included in his estate instead of being treated as the proceeds of property owned by decedent and his wife as tenants by the entireties.

The court has reviewed the assets of the testamentary estate of $84,548.50 and has likewise reviewed the debts of the estate. The court has considered the necessity of filing a Federal estate tax return and the responsibility of the executrix in holding the assets of the estate during administration, the judgment required in the sale and disposition of the personal property, and her responsibility for winding up the affairs of the estate and making final distribution to the proper distributees.

The court rules that the reduction of the executrix' fee to $2,000 by the Commonwealth for inheritance tax purposes was a reduction in an amount larger than was justified, and failing to properly recognize all the elements and responsibilities included in the estate administration. The entire estate for Federal estate tax purposes was in excess of $260,000. The court is of the opinion that the fee of the executrix, in the amount of $7,800, was fair and reasonable and should be allowed in full as a deduction for inheritance tax purposes.

The State tax examiner reduced the $1,000 family exemption to $752.94. This was proper. A petition filed May 28, 1969, prayed for an allowance of $752.94 and decedent's widow received this amount only on account of her exemption. Accordingly, the family exemption allowance for tax purposes is only the amount claimed by the widow and allowed by the court. In Stevens Estate, 434 Pa. 259, Stevens contended that on the death of every decedent, the statutory provision of section 211 of the Fiduciaries Act of April 18, 1949, P. L. 512, gave every decedent a deduction for tax purposes of the statutory amount of the exemption. The court said, at page 263:

"An example should underscore the weakness in Alton Stevens' argument. Assume in this case that all the property was owned in joint tenancy by the decedent and a third person who was not a member of the family. In such a case Alton Stevens could not come before the Orphans' Court and ask for $1,000.00 in value from the property formerly held in joint tenancy and now, after the decedent's death, owned solely by the third person. He could not do so because there would be no assets in the decedent's estate. The property was conveyed to the third person by operation of law and did not go through the decedent's estate; therefore, Alton Stevens could exercise no rights over that property. If all this be true, we hardly think that it makes a difference that property was owned in joint tenancy by the son instead of a stranger to the family relationship. Certainly, §211 does not provide for any such distinction.

"Finally, we must look at the purpose of the family exemption. The exemption was included in the Fiduciaries Act so that the family of a decedent would have some funds available to tide them over until the decedent's estate was settled. Schwartz Estate, 166 Pa. Superior Ct. 459, 461, 71 A. 2d 831 (1950); Ochsenhirt

Estate, 157 Pa. Superior Ct. 270, 272, 43 A. 2d 341 (1945); Bell's Estate, 139 Pa. Superior Ct. 11, 15, 10 A. 2d 835 (1940). In this case Alton Stevens received nothing because he 'paid' the exemption from his own funds to himself. The legislative purpose behind the exemption would seem to indicate that no exemption should be allowed in this case because no valid purpose would be served thereby (other than to save Alton Stevens inheritance tax, a purpose which does not comport with the legislature's intent in allowing the exemption).

"In the alternative, even if we were to adopt the lower court's approach to this question, we would still have to conclude that the court below was in error. The lower court in effect looked at §601 and held that, regardless of what the first sentence might mean, the remainder of the section sets forth an exception for estates containing no assets, which exception controls this case.

"The second sentence was added to §601 to reverse the result in Kritz Estate, 387 Pa. 223, 127 A. 2d 720 (1956). It was intended as a restrictive, rather than an expansive, amendment. We must conclude from reading the opinion of the court below that it was using this amendment to create a tax deduction which did not exist before the legislature adopted the second sentence. We think that, in passing this amendment, the legislature intended to limit, rather than to expand, the allowable deductions from inheritance tax where there are no assets in the estate and that the lower court was in error in holding that this amendment carved out an exception which authorized a family exemption in this situation.

"Furthermore, we think that, on the face of the statute, the taxpayer has not qualified for a deduction. The act states that a deduction 'shall be allowed to the transferee only to the extent that the transferee

has *actually* paid the deductible items. . . .' (Emphasis added) In this case Alton Stevens paid nothing. We cannot believe that the word 'actually' can be construed in any reasonable fashion to encompass the situation where a taxpayer 'pays' the exemption to himself."

The final contention of Mrs. Beck is that the $55,000 paid to her for the medical office, practice and equipment of her husband, Dr. Erwin Beck, at 3500 Fifth Avenue, was paid to her as the surviving owner of the personal property, practice and business held by her and her husband as tenants by entireties. Mrs. Frances L. Beck insists that there is no inheritance tax due for the reason that the said fund passes to her free from taxation in the same manner as other entireties property passes to the surviving spouse.

The contract of sale between Frances L. Beck and Murray Reswick, M.D., executed January 1, 1969, provides for the sale of the medical practice, all radiographic equipment, office furniture, medical appliances and supplies, drugs, office supplies, *accounts receivable*, film files, patient card files, all property used in the practice as itemized in schedule A of the said contract, good will and any rights appurtenant to the practice of medicine conducted by Erwin Beck, M.D., at 3500 Fifth Avenue, Pittsburgh, Pa. Attached to the agreement was a schedule of equipment located on the property above.

The contract purports to convey as a unit the professional practice of Dr. Erwin Beck, as well as all the equipment used in his said practice and any outstanding accounts due him.

At the trial of the case, counsel for the surviving spouse offered in evidence the bank books, the check books, and the signature card showing that a bank account was opened August 27, 1959, in the name of Erwin Beck, M.D., or Frances Beck.

The Medical Practice Act of June 3, 1911, P. L. 639, 63 PS §401, et seq., requires that an individual, to practice medicine, shall be licensed by the Commonwealth of Pennsylvania. Frances L. Beck, the wife of the doctor, was not so licensed. She could have no interest in the medical practice as such. Certainly, there could be no entireties tenancy in the practice of medicine where the surviving spouse was not licensed.

Petitioner contends that there was no good will in the sale of January 1, 1969, even if the agreement does recite the fact that good will was sold. Petitioner cites In re Caldwell Estate, 276 N. Y. Supp. 425, in support of his argument. However, petitioner misses the point of the taxability of the $55,000, the proceeds of the sale of the medical practice.

The medical practice was the individual property of Dr. Erwin Beck. The tools, radiographic equipment, office furniture, records and supplies, purchased by him and in his possession in his office are presumed to be his and taxable as part of his estate, unless the contrary is shown. The Commonwealth avers and the estate concedes that the Commonwealth established a prima facie case in this appeal proceeding by introducing its appraisement. The burden of proof then shifted to the estate to establish that the appraised assets did not belong to decedent but belonged to him and his wife as tenants by the entireties. The only equipment in Dr. Beck's office that was *specifically* pointed out as entireties property was an X-ray machine appraised at $2,083.50 and a Packer X-ray machine called X-O-Mat appraised at $2,853.47. This amounts to a total of $4,936.37.

The ownership of all of the items sold, as aforesaid, was attempted to be proved by the statement of Mrs. Frances L. Beck, the widow-executrix, that the furniture, the medications, the films, unused films,

syringes and all equipment used to carry on the business were owned by Dr. and Mrs. Beck as tenants by the entireties and by the offers of check books used by decedent.

On crossexamination, Mrs. Beck, the widow-executrix, testified that she is not a doctor; the doctor's statements for medical services were made payable to him alone; all income from the practice came to the doctor alone; there were bills of sale for each and every piece of equipment; each such bill of sale showed the equipment to be titled in the doctor's name alone; the wife's name was not on any bill of sale; the doctor alone set the fees; the doctor alone hired and fired his employes; the written lease for the doctor's office space was in his name alone; the doctor alone was the insured on the malpractice insurance; the doctor alone was the insured on the workman's compensation insurance; the doctor alone was the insured on the insurance carried on the equipment; the doctor alone was designated as the employer on the Internal Revenue Service withholding tax forms; and also on the Pennsylvania Unemployment Compensation forms; the wife signed the unemployment compensation form for the fourth quarter of 1968 as "executrix" not surviving owner as she now claims to be; on the Internal Revenue Service tax returns, the doctor was listed as the sole owner of the medical practice and that the Internal Revenue Service returns showed that the physical assets were depreciated as assets owned by the doctor alone.

The court is of the opinion that the estate failed to sustain its burden of proof as to the ownership of the property here in question and finds, as a fact, that all of the items sold by Mrs. Frances L. Beck to Murray Reswick, M.D., under the contract of sale executed January 1, 1969, were the individual property of Erwin Beck, M.D. and, as such, were subject to inheritance tax and properly appraised for that purpose at $55,-000.

A decree will be drawn in accordance with this opinion.

### DECREE

And now, February 27, 1970, it appearing that a petition for appeal from the appraisement of the inheritance tax in the above-entitled estate was presented to this court July 15, 1969, and that the same came on for hearing September 13, 1969, and January 13, 1970, after hearing all matters of appeal, including the appeal from the reduction for tax purposes of the fee of the executrix, and it appearing that the estate for Federal tax purposes is approximately $260,000, it is ordered, adjudged and decreed that the appeal as to the amount of the deduction of the fee of the executrix is sustained and the full amount of the fee of the executrix, viz, $7,800 is allowed as a tax deduction.

It is further ordered, adjudged and decreed that the appeal from the inclusion of the value of the professional business of decedent in the appraisement in the amount of $55,000, and from failure to allow more than $752.94 as the deduction for the family exemption, is dismissed.